Judge Haggin
delivered the opinion of the Court.
LEWIS and Wife filed-lheir bill in the Jefferson eir« cuit court, against Humphreys and others, alleging a superior equity to a tract of 500 acres of land, founded upon an entry made by William Montgomery, in virtue of a treasury warrant,- with the surveyor of Jefferson county, on the 2'd day of April 1781, “on the waters Chapline’s fork of Salt river, to begin at a beech tree marked with a T. near the trace leading from the Salt river garrison to Harrodsburg, and about a quarter of a mile from the crossing, on the lower side of said fork, and to run southwestwardly 200 poles; thence north-wardly and back for quantity.”
The defendants relied upon their elder grant, átid the circuit court sustained the bill. •
The only question made in this court,, relates to (he entry of the complainant.
f°!'kebfrom° Saltriver^ar-rison to Har-roclsburg,^is^ uncertainly showing ano-her crossing of the fork by the trace, out ofthecounty.
Nor is such call affected by showing fora -rival, a crossing 90 polos above that claimed Where it* ap’ pears the one claimed was generally used,and that the rival was off the main ^travelled* in high water -Concordant, Craght™ VjS ¡40 °3.) ° '
But uncertainty as to near which of •he- on °r?SS" distant,Pa M marked trae called for as found, is not fatal to the entry.
So of uncer-which ddoof ¡the stream,
'Sait river garrison, and Harrodsburg, and Chapline^ fork, and the trace, are all shown to have been notorious on the 2d day of April 1781; but it is objected, that the entry is vague, because the trace crossed Chap-line three times, and it was doubtful which should be consMered the lower side of that stream, and because. the marked tree had not been identified or proved notorious.
rphe upper crossing of Chapline appears to have been some distance east of the line dividing the counties of Jefferson and Lincoln, and therefore it can create no difficulty. •
And the two lower fords are within 90 poles of each other, the lowest within 54 poles of the tree shown as the beginning, bv the complainant-; and the testimony shows, that of those two crossings the lower was generally Used, and that the upper was off the main trace, and only travelled in high water. We, therefore, consider the to the lowest.
Cut this object is only named as descriptive of the neighborhood,' and affording a direction to the beginning; and it would not seem unreasonable, to require ¡Jje subsequent locator to commence his search at each propino-
The latter remarks are also applicable to the supposed difficulty of deciding which was the lowet side of Chapline. A search for the marked tree, from each side of the stream, a quarter or half a mile, with the trace, each direction and from each ford, would not bo oppressive.
Still, we suppose that one disposed in truth to find R”® *'ree’ anJb «-he most superficial knowledge of the country, would have gone to that side of the stream «pon which Montgomery’s survey was in truth made. descending from a higher to a lower country, he could hardly fail to declare that the lower side. And if a beech, marked as described, had stood, as shortly af-(erwards it certainly did, it could have been promptly and known.
■ Upon (he identity of this tree, a3 marked at the date 0f the this cause must
One witness, George Calhoon, states that he travel-je¿ this trace in the fall of the year 1781, in company about forty men.'; that they camped on the lower side of Chapline, the first night; that, in the year 17$2, *3 be lived near Bardstown, and frequently, in that year, passed, on his. way to Harrodsburg and on bunting excursions, and generally, in the latter year, noticed the tree, with marks conspicuous from the trace. He says nothing of its appearance at that time. Another witness, Daniel Bland-, deposes, that in the year 1784 or 1785, he descended the trace,.and noticed thetree, and the marks looked as if they had been made two or three years previously.. Take the medium between these indefinite periods, and we are brought back to the latter part of the year 1782, the same year.in which the tree was first seen by Calhoom.
Butfhe lower side of Chap-lino’s fork, at thocrossingof this trace, is tiie western.
To prove a marked, tree, evidence of one witness that he saw the marks the year after the entry, but who says nothing of their appearance; and of another, that he saw them 3 or 4 years after the date of the entry, & thought they looked as if theyhad been mafic 2 or 3 years, is not sufficient, in the absence of all other circumstances..
Artificial objects called-for, must be proved to have existed co temporary, with the entry. As to natural objects, it may. be ni esumedt
Hardin, S/i(My,&c. for plaintiffs; Rowan, for defen-tlautsv
Although several witnesses, conversant in that quarter about that period, have been examined in the cause, yet they are silent touching the marked tree.
Where natural objects are shown, corresponding with the entry, their existence at its date might be presumed; yet it has been held, that in this, springs afford an exception; and it has long been settled, that ■artificial objects must be proved cotemporary with the entry. If either of the witnesses had ventured to exr nress an opinion that the tree had been marked at an earlier period, perhaps this court, in support of.the instrument, might so consider it.
If anything peculiar in the objects .or-circumstances, had been shown, rendering it probable that the locator had been on the ground, in contemplation of its location, previous to entry, the conclusion might be just, that he had marked- the tree at that time. But the beech tree is probably as common as any tree in those woods; such an object as one in the surveyor’s office, who held a surplus warrant in Ins hand, would be certain to find, and he could ma.ke the marks at a subsequent day.
We cannot say that the beech tree was marked, at the date of tbe entry of the complainants, and therefore differ in opinion with the circuit court.
The decree must be reversed with costs, the cause remanded, and the bill dismissed with costs, &c.